**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**JOHN HARVEY REYNOLDS,**
    **Plaintiff,**

**v.**                                             **Case No. 5:12cv52/CJK**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
    **Defendant.**

---

## MEMORANDUM ORDER

This case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying John Harvey Reynold's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83. Mr. Reynolds will be referred to by name, as claimant, or as plaintiff. The parties have consented to Magistrate Judge jurisdiction, pursuant to 28 U.S.C. § 636(c), and FEDERAL RULE OF CIVIL PROCEDURE 73, for all proceedings in this case, including entry of final judgment. (Docs. 6, 7). Upon review of the record before this court, I conclude that some of the findings of fact and determinations of the Administrative Law Judge (ALJ), as modified by the Appeals Council, are not supported by substantial evidence. The decision of the Commissioner, therefore, will be vacated and remanded for further proceedings.

Mr. Reynolds appeared at a hearing held on February 1, 2010. T. 14. The ALJ issued an unfavorable decision, T. 11-19[1], finding that claimant had the residual functional capacity to perform light work and therefore to perform his past relevant work as a service station attendant. T. 18. Claimant appealed to the Social Security Appeals Council, which granted review. T. 1-6. The ALJ and the Appeals Council found that claimant suffers from the following severe impairments: right shoulder impingement and hepatitis C. T. 5, 16. The Appeals Council concluded claimant had no past relevant work, and could perform less than a full range of light work. T. 6. Nonetheless, the Council found that a significant number of jobs that claimant could perform existed in the national economy, dictating a finding that claimant had not been under a disability from the date of his application through the date of the hearing. T. 6. This decision became the Commissioner's final decision from which this appeal has been taken.

Challenging the Commissioner's decision, plaintiff sets out three issues for review. First, plaintiff avers that substantial evidence does not support the ALJ's assessment of residual functional capacity, because "the record is devoid of any RFC assessments provided by a physician." (Doc. 11, p. 8). Next, he argues the decision must be reversed because the ALJ failed to explain the weight accorded to "many" of the medical opinions of record. (Doc. 11, p. 8). Finally, plaintiff seeks reversal of the ALJ's finding that chronic obstructive pulmonary disease (COPD),

---

[1]The administrative record, as filed by the Commissioner, consists of seven volumes (doc. 8-2 through 8-8), and has 336 consecutively numbered pages. References to the record will be by "T." for transcript, followed by the page number.

degenerative disc disease and scoliosis do not qualify as severe impairments under the applicable standard. (Doc. 11, p. 8).

THE ALJ ORDER

The ALJ determined that plaintiff has two conditions that qualify as "severe impairments." These are right shoulder impingement and hepatitis C. T. 16. The following portions of the ALJ decision are also pertinent to the issues raised in this appeal:

> "In addition to his severe impairments, the claimant has the medically determinable impairment of chronic obstructive pulmonary disease which is nonsevere in nature because it does not significantly limit the claimant's ability to perform basic work activities.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). In reaching the conclusion that no physical listing is met or equaled, the undersigned reviewed the appropriate listings and finds the claimant's condition does not approach the severity to be determined disabled by meeting any listing in Appendix I, Subpart P, Regulations No.4, either individually or in combination. Additionally, no treating, examining, or non-examining physician has noted any finding equivalent in severity to any listed impairment.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b). The claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can sit, stand, and/or walk for six hours each in an eight hour workday. Further, the claimant can occasionally perform all postural movements."

T. 16-17.

The ALJ's discussion of the relevant medical evidence is as follows:

"Wiregrass Medical Center treatment records covering the period July 17, 2006 through January 25, 2010, reflects the claimant's history of complaints for chronic airway obstruction, shoulder injury and back pain. The record documents multiple episodes of medical instruction for the claimant to cease smoking. X-ray and bone scan studies of the claimant's lumbar region, shoulder, knees, and ankles are unremarkable. Great weight is given this medical evidence because the provider is a treating source with a long term relationship with the claimant and because the medical evidence is well supported by the record as a whole (Exhibits 2F, 9F, and 11F).

A gastroenterology consultation report from Stavros A. Diavolitsis, MD, dated October 13, 2008, reflects an essentially normal physical examination. The claimant's liver enzymes were normal on examination. Great weight is given this medical evidence because the source is an examining physician whose evidence is well supported by the record as a whole (Exhibit 6F).

Tallahassee Orthopedic Clinic treating records covering the period November 4, 2006 through October 27, 2008, describe treatment for a right shoulder impingement and possible rotator cuff injury. As a course of treatment, the claimant has received a cortisone injection into the subacromial space of his right shoulder. Great weight is given this treating source medical evidence because it is consistent with and well supported by the record as a whole." (Exhibit 7F).

T. 18. This order will make more specific reference to the medical record, as appropriate.

The ALJ's order also notes certain matters raised in Mr. Reynold's testimony. Claimant's back pain radiates to his leg. He says he needs shoulder surgery, and has been waiting a year for the procedure. T. 18. Claimant tires easily due to his chronic obstructive pulmonary disease ("COPD"). T. 18. As a result he lays down most of

the day. T. 18. He does not take medication for COPD or hepatitis C. T. 18. In terms of activities of daily living, the order observes that claimant watches over his elderly parents. T. 18. The ALJ adjudged claimant's subjective complaints to be less than credible. T. 18.

In his application, claimant said his ability to work was limited by hepatitis, his right shoulder, and "heart." T. 156. He attributed his limited ability to "pain in my liver." T. 156. At the administrative hearing, however, claimant's lawyer mentioned other conditions, including scoliosis and back pain radiating into the legs. T. 27. The lawyer also mentioned "fatigue," which he attributed to the hepatitis. T. 27. In testimony, claimant mentioned "this new thing," apparently referring to abdominal pain. T. 33, 37.

Claimant also discussed his activities and limitations. He washes clothes for the family, tries to keep his fiance's house clean, does dishes, folds clothes and towels, and cuts the grass "every now and then." T. 41-42. After mentioning the grass, claimant said "that's been several years ago." T. 42. He can't fish, because of the shoulder pain. T. 43. He said the number one reason he couldn't work, as of the date of the hearing, was his abdominal pain. T. 46-47. He also has back pain, without numbness. T. 48-49. He is waiting for shoulder surgery. T. 51.

Plaintiff has had chronic obstructive pulmonary disease for quite a few years. T. 53. He takes no medication for hepatitis or for his breathing problems. T. 52-53. Recent bone scans showed nothing wrong. T. 52. He becomes short of breath after he climbs a flight of stairs, but he can do that. T. 54.

Mr. Reynold's criminal history includes "about" fifteen arrests. T. 60. He once served four and a half years in state prison for some sort of driving charge. T. 60.

## GENERAL LAW APPLICABLE TO DISABILITY CLAIMS

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy

that accommodates her residual functional capacity and vocational factors, she is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps him from performing her past work. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Eleventh Circuit has explained the operation of step five. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations. *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) ('The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act')).").

Step five (or step four in cases where the ALJ decides a claimant can perform her past work) is where the rubber meets the road. At that point, the ALJ formulates the all-important residual functional capacity (RFC). Even where one or more severe impairments are established, the claimant must show that she cannot perform work within that residual functional capacity. The ALJ establishes residual functional capacity, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence, and (2) the claimant's subjective complaints (generally complaints of pain). Residual functional capacity is then used by the ALJ to make the ultimate

vocational determination required by step five.[2]  "[R]esidual functional capacity is the most [claimant] can still do despite [claimant's] limitations."[3]  20 CFR § 404.1545(1). Often both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict, and that conflict leads, as in this case, to the points raised on review by disappointed claimants.

<u>ANALYSIS</u>

Plaintiff first maintains the ALJ's RFC was not supported by a treating or examining physician.  In his decision, the ALJ determined that Mr. Reynolds had the RFC to perform:

---

[2]  "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.)  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."  20 C.F.R. § 404.1520(a)(4).

[3]  In addition to this rather terse definition of residual functional capacity, the Regulations describe how the Commissioner makes the assessment:

> (3) Evidence we use to assess your residual functional capacity.  We will assess your residual functional capacity based on all of the relevant medical and other evidence.  In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.  (See § 404.1512(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.  (See §§ 404.1512(d) through (f).)  We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 404.1513.)  We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons. (See paragraph (e) of this section and § 404.1529.)[.]

20 C.F.R. § 404.1545(a)(3).

light work as defined in 20 CFR 416.967(b). The claimant is able to lift and/or carry 20 pounds occasionally and ten pounds frequently. He can sit, stand, and/or walk for six hours each in an eight hour workday. Further, the claimant can occasionally perform all postural movements.

T. 17.

This finding should not stand, says plaintiff, because the record does not contain an assessment of RFC completed by a physician. Plaintiff argues that the only RFC assessment in this record was done by Maurice Miller, a Single Decision Maker. T. 283-290. Plaintiff maintains that in the face of no substantial evidence of RFC, "the ALJ simply formulated his own opinion regarding Mr. Reynold's limitations." (Doc. 11, p. 10). According to the Commissioner, however, the ALJ fully evaluated the evidence, as well as claimant's testimony, before determining RFC. (Doc. 14, p. 10). Because I find that plaintiff is correct in this contention, the decision must be reversed.

Claimant cites two cases in support of his argument concerning lack of proper basis for the RFC. In *Coleman v. Barnhard*, the district court reversed a finding of RFC to perform medium work. 264 F. Supp. 2d 1007, 1010 (S. D. Ala. 2003). The court in that case found it unclear, in the absence of a functional capacities assessment, how the ALJ determined the medium work RFC. *Id*. Claimant also cites *Thomason v. Barnhard*, 344 F. Supp. 2d 1326 (N.D. Ala. 2004), for the proposition he advances. In that case the court did note the absence of any formal assessment of plaintiff's RFC. *Id*. at 1329. In a rather stark assessment of the order before it, the *Thomason* court found "**no evidence** plaintiff can perform medium work." *Id*. (bold in original).

As the Commissioner notes here, an ALJ has the duty to formulate RFC based on all the relevant credible evidence of record. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Commissioner does not, however, note his own regulation concerning RFC. *See supra* note 3. This regulation acknowledges:

> However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.

20 C.F.R. § 404.1545(a)(3).

As to the shoulder condition, this record is replete with documentation of plaintiff's complaints. T. 239-282, 317-325, 334-336. Certainly, these records are not conclusive as to the limitations imposed by the shoulder issue. Nevertheless, plaintiff was prescribed opiate pain medication. T. 320. He was told to rest and avoid straining the shoulder. T. 321. The reports note a history of torn rotator cuff. T. 322. Although not directly addressing limitation, one note finds the shoulder "tender with abduction." T. 325. The extent of orthopedic treatment for the shoulder is unclear, although the ALJ mentioned the period from November 2006, until October 2008. A report from Tallahassee Orthopedic Clinic dated October 27, 2008, says Mr. Reynolds is "currently under our treatment for right shoulder impingement and possible rotator cuff tear." T. 312. That this report is brief and inconclusive, does not make it unimportant. Even were I to conclude that plaintiff overstates the need for a formal medical assessment of RFC, I would still find that the medical

evidence as to the shoulder suggests limitations not accounted for by the ALJ. Moreover, the RFC formulation in this case, although mentioning the shoulder, makes no accommodation for that condition, perhaps because the record is incomplete. T. 18.

Claimant's activities of daily living do not change the result. He appears to be doing what he can to be of assistance to his family. Without some assessment of his capacities, however, the testimony exists in something of a vacuum. Moreover, the ALJ did not specifically refer to the activities (other than some previous limited work as a welder and that claimant "watches over" his parents), and I cannot tell what role, if any, this testimony played. RFC, therefore, is not supported by substantial evidence.

Reversal on the first point makes unnecessary lengthy consideration of the other points. Some further discussion is appropriate, however, because this does appear to be a case where the Commissioner should have sought further medical consultation as to some conditions. Some attention is also required as to plaintiff's claim of multiple severe impairments, beyond those discussed by the ALJ. The court will not address the claim that the ALJ failed to explain the weight he accorded to a number of medical opinions, because I have concluded that further development of the medical record must occur.

The court turns first to the question of development of the medical record. The Social Security disability benefits process is inquisitorial rather than adversarial, *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000), *Crawford & Co. v. Apfel*, 235 F.3d 1298 (11th Cir. 2000), and is informal. *Richardson v. Perales*, 402 U.S. 389, 400-401 (1971); *Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir. 1993); 20 C.F.R. §

404.900(b). With informality comes a duty to develop a complete record as is done by European magistrates. *Kendrick*, 998 F.2d at 456. It is well established in this Circuit that the ALJ has an affirmative duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990); *Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir. 1986); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The duty to develop the record exists even though, as here, the plaintiff is represented by a lawyer or paralegal. *Brown*, 44 F.3d at 934 (*citing Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981)); *Smith*, 792 F.2d at 1551 (*citing Cowart*, 662 F.2d at 735). This duty requires that the ALJ "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited," *Cowart*, 662 F.2d at 735 (citations omitted), and "investigate the facts and develop the arguments both for and against granting benefits." *Crawford & Co.*, 235 F.3d at 1304.

That does not mean, however, that the ALJ must search to the last document to find every possible piece of relevant evidence. Rather, he must have sufficient evidence to decide the case. Where the ALJ does have sufficient information to decide the case, he can do so. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and adequate to a decision, no showing of prejudice is made). These rules do not change the fundamental directive that "[t]he claimant has the burden of proving he [or she] is disabled, and is therefore responsible for producing evidence in support of the claim." *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 416.912(a), (c).

As to the question of development of the record, plaintiff relies upon the portion of 20 C.F.R. § 404.1545(a)(3) quoted above. *See supra* p. 10. Plaintiff notes that, despite the ALJ's conclusion that plaintiff's statements concerning his symptoms are not credible, the order cites to no medical evidence in support of the severity of the limitations he claims. Plaintiff also relies upon 20 C.F.R § 404.1529(b)[4] to argue that the Commissioner had a duty to further develop the record in this case. I agree with plaintiff that one cannot really draw reliable conclusions concerning the shoulder condition, as the record now stands. As noted above, RFC as regards this condition is not supported by substantial evidence. This comment should not be read to suggest that the condition is necessarily disabling. The record simply lacks medical substantiation of limitations related to the shoulder, and this problem must be remedied on remand.

As to the hepatitis, the ALJ also found the condition severe. Based upon the present record, the ALJ did not err in failing to develop further evidence as to that condition. Examination by a specialist in October 2008, notes few if any issues with plaintiff's medical systems. T. 310. Testing revealed normal liver enzymes. T. 310. The physician's chart does not suggest limitations, but, instead, speaks to prevention and transmission of hepatitis. As to this condition, the record was not incomplete, and no prejudice is shown regarding insufficient development. *See Graham*, 129 F.3d at 1423.

_____

[4] "We will develop evidence regarding the possibility of a medically determinable mental impairment when we have information to suggest that such an impairment exists, and you allege pain or other symptoms but the medical signs and laboratory findings do not substantiate any physical impairment(s) capable of producing the pain or other symptoms." 20 C.F.R § 404.1529(b).

Also, the ALJ accepted COPD as a medically determinable impairment "which is nonsevere." The ALJ later noted evidence of records from Wiregrass Medical Center, documenting the history of complaints of COPD. The issue was not further developed, however, with the ALJ's only comment being "[the] record documents multiple episodes of medical instruction for the claimant to cease smoking." T. 18. Although an accurate comment, the observation does not speak to the severity of the condition, nor does it amplify the earlier statement by the ALJ that the condition is not severe. T. 16. Here, the medical record does not make clear whether plaintiff's complaints of fatigue are related to pulmonary obstruction. Because the available records suggest the condition is chronic, that issue should be further developed.

The ALJ also did not err with regard to plaintiff's present claim that his degenerative disc disease and scoliosis should have been regarded as severe. Plaintiff relies upon the "slight abnormality" rule to argue that these conditions should have been accepted as severe.[5] Plaintiff's argument is not persuasive. Although noting complaints of back pain, plaintiff has not identified the source of his claim of severe degenerative disc disease. He may, perhaps, rely upon a lumbar spine X-ray to support his complaints of back pain. T. 335. This study, however, notes that "disc spaces are preserved and pedicles are intact." The report finds a slight curvature to the left, apparently attributable to "slight levoscoliosis," but characterizes the exam

---

[5] As applied, the step two severity determination is a threshold inquiry used to screen out "trivial" claims, meaning an impairment is not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also Bowen v. Yuckert*, 482 U.S. 137, 145 n.5 (1987); *Stratton v. Bowen*, 827 F.2d 1447, 1453 (11th Cir. 1987); *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

as otherwise unremarkable.  T. 335.  As to the allegations of back problems, plaintiff did not carry his burden to suggest, much less to demonstrate, a severe impairment.

In sum, the ALJ's discussion of RFC as to the right shoulder is not supported by substantial evidence.  The record must be further developed as to those conditions identified in this order.  No error is shown with regard to the ALJ's treatment of hepatitis and the alleged back condition.

ACCORDINGLY, it is ORDERED:

The decision of the defendant Commissioner is VACATED and the matter is REMANDED to the Commissioner for further proceedings consistent with this order.

At Pensacola, Florida, this 11th day of  December, 2012.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**